UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-81201-CIV-DIMITROULEAS/SNOW

GLORIA SMITH-GRIMES,

    Plaintiff,

vs.

CITY OF WEST PALM BEACH, a
municipal corporation, VINCENT MORTON,
individually and in his official capacity, and
DOUGLAS BALES, individually and in his
official capacity,

    Defendants.
_____/

## ORDER GRANTING IN PART CITY'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant City of West Palm Beach's Motion for Summary Judgment [DE 97].  The Court has carefully considered the Motion, Plaintiff's Response in Opposition [DE 104], Defendant City of West Palm Beach's Reply [DE 112],[1] the statements of material facts and record evidence, and is otherwise fully advised in the premises.  By an Order entered separately today, the Court denied the other Defendants' motion for summary judgment. [DE 135].

### STANDARD OF REVIEW

In a summary judgment motion, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it

---

[1] The Court notes that Plaintiff filed a motion to strike this reply [DE 115], which the City opposed, [DE 116].  Plaintiff's premise was that the Reply was repetitious and made new arguments without citing record materials.  The Court disagrees that striking the reply is appropriate.  The Court will consider the Reply inasmuch as it raises proper arguments and is properly cited.

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden of production, that burden shifts to the nonmoving party to demonstrate that there is a genuine issue of fact for trial. *See id.* at 324. The party opposing a motion for summary judgment may not simply rest upon allegations or denials in the pleadings, but rather must go beyond the pleadings to show specific facts demonstrating that there is a genuine issue for trial. *Id.*

The Court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the nonmoving party's burden is not discharged by pointing to a mere scintilla of evidence that creates a metaphysical doubt about an issue; rather, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *See id.* at 252; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986).

## MATERIAL FACTS

The Court fully incorporates the statement of material facts set forth in the order denying the Officers' motion for summary judgment. [DE 135].

## DISCUSSION

Smith-Grimes sued the City in Count III and VII of her complaint. Count III alleges that the City is liable under 42 U.S.C. § 1983 for the Officers' conduct. Count VII is a claim for state law battery and false imprisonment based on *respondeat superior*.

### A.     *Section 1983 Liability*

A plaintiff can only impose § 1983 liability on a municipality if the plaintiff can show (1) that her constitutional rights were violated, (2) that the municipality had a custom or policy that

constituted deliberate indifference to that right, and (3) that the policy or custom caused the constitutional violation.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).   In the Court's separate order denying the Officers' motion for summary judgment, the Court found that Smith-Grimes has shown for the purposes of summary judgment that her constitutional rights had been violated.  The Court must now determine whether the City had a custom or policy that constituted deliberate indifference to Smith-Grimes' right to be free from excessive force and false arrests and whether that policy or custom caused the violation.

The plaintiff must identify the official policy or custom that caused the injury.  *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  A custom is a practice so settled and permanent that it takes on the force of the law.  *McDowell*, 392 F.3d at 1290.  To demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice." *Id.* (internal quotation omitted).

The reason why a showing of policy or custom is required is to "ensure[] that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04.  Though normally in failure-to-train cases, the municipality must be put on notice of the deficiencies of its training program through a pattern of constitutional violations, in certain narrow instances, prior incidents are not necessary if the likelihood for constitutional violations are so high that the need for training would be obvious. *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009).

Smith-Grimes has argued that the City has an unconstitutionally deficient program for training and supervising its officers in the use of force and in making arrests.  A municipality is only liable for failure to properly train officers if it (1) inadequately trains or supervises the officers, (2) this failure to train or supervise is a city policy, and (3) that city policy causes the employees to violate constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989).  Smith-Grimes has presented no evidence to refute the City's evidence that it fully and adequately trained its officers over lengthy periods of time, or that the City had a system to properly supervise officers.  She merely states that the City's affiants describing the training and supervision lacked personal knowledge of what happened during the arrests at her house.  Such personal knowledge is not required.  They did have proper knowledge of the sorts of training and supervision that the City provided to its officers.  *See Canton*, 489 U.S. at 390 ("[T]he focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform," and not merely on the faulty actions of a particular officer).  The Court rejects the challenge to the affiants' qualification to give testimony as baseless.  The Court also rejects Smith-Grimes' attempt to show an unconstitutional policy or custom simply by pointing to the fact that her rights were violated.  *See McDowell*, 392 F.3d at 1290.  Smith-Grimes failed to create a genuine dispute of material fact on the City's training and supervision of its officers' use of force and arrest process.

Second, Smith-Grimes argues that the City's policy forcing people complaining about police brutality to call a non-emergency number other than 911 constituted deliberate indifference toward her rights. Her argument is that the City's policy essentially gave its officers an open invitation to violate constitutional rights until a supervisor eventually arrived.

The Court disagrees. First, Smith-Grimes has not shown that it was the City's policy to reject 911 calls for police brutality. Pointing to what a 911 operator did in her own case is insufficient to show a pattern or practice. *See McDowell*, 392 F.3d at 1290. She has therefore failed to even show that what the 911 operator did in her case was a policy or custom.

Second, even assuming it was a policy, Smith-Grimes has not shown that 911 policy was taken with deliberate indifference to the known or obvious constitutional violations it would create. *See Brown*, 520 U.S. at 407. To show deliberate indifference, she needed to demonstrate that the City was on notice of a pattern of constitutional violations and did nothing, or that the policy or custom would obviously lead to constitutional violations. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). Smith-Grimes did not present anything more than her own speculation that the 911 police brutality policy has caused officers to use excessive force and engage in false arrests. She points to no pattern of injuries resulting from the policy. *Cf. McDowell*, 392 F.3d at 1291 (finding no deliberate indifference when the plaintiff failed to identify a pattern of injuries linked to the Court's budgetary decisions). Police brutality and false arrests were not "highly predictable consequences" of requiring individuals reporting police brutality to call a separate number, so it was not sufficiently obvious to put the City on notice even without prior incidents. *See Brown*, 520 U.S. at 409-10. With no notice of the consequences, and finding that the constitutional violations were not obvious, Smith-Grimes has not shown that the 911 policy demonstrated deliberate indifference to her constitutional rights.

Moreover, even if a municipality was obligated to receive police brutality complaints via 911 while the officers were still on the scene, Smith-Grimes has failed to show how that violation caused her injury. Even under Smith-Grimes' retaliation theory, Bales dragged her out

of the house immediately after she called 911.  If the 911 dispatcher had sent out a supervisor promptly, the supervisor could not have arrived in time to have prevented the arrest.  There was no causation as to her arrest.  Furthermore, with no proof of the policy causing officers to act more violently, Smith-Grimes has also failed to show that the 911 policy caused the Officers to use unnecessary force and unlawfully detain at any point in the day.

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.  Plaintiff has not satisfied the rigorous standards of culpability and causation to demonstrate she is doing anything more than trying to hold the City responsible for the conduct of two officers on one occasion.  Summary judgment is granted to the City on Count III.

B.      *Respondeat Superior Liability for State Law Claims*

Under Florida state law, local government bodies may be liable for the actions of their police officers when those officers are carrying out operations.  *Brown v. Miami-Dade County*, 837 So. 2d 414, 418 (Fla. 3d DCA 2001).  Thus, sovereign immunity does not bar an action for false arrest.  *Lester v. City of Taveres*, 603 So. 2d 18, 19 (Fla. 5th DCA 1993).  Likewise, a city can be liable for an officer's use of excessive force in making an arrest.  *Woodall v. City of Miami Beach*, 599 So. 2d 231, 232 (Fla. 3d DCA 1992).  Because the Court has found that Smith-Grimes' state law claims for battery and false arrest against the Officers survive summary

judgment, it is possible that the City will be held liable for these counts under *respondeat superior*.[2]

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Strike the City of West Palm Beach's Reply [DE 115] is **DENIED**;

2. Defendant City of West Palm Beach's Motion for Summary Judgment [DE 97] is **GRANTED IN PART**. Judgment shall be entered in Defendant City of West Palm Beach's favor on Count III of Plaintiff's Complaint by a separate order at the close of proceedings.

3. Plaintiff's state-law claims in Count VII will proceed to trial.

---

[2] The parties' briefing on *respondeat superior* only argued that the Officers had done nothing wrong, so there was no liability to impute. Therefore, they did not address sovereign immunity issues. Though the case law the Court referenced indicates that a city may be held liable for false arrest and battery by a police officer, at first blush there appears to be a curious tension with those cases and Florida Statute § 768.28, the statute waiving sovereign immunity. That statute grants immunity to municipalities for an officer's conduct that is committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. However, one cannot commit a battery or be liable for excessive force for negligent conduct; the actor must be acting intentionally. *City of Miami v. Sanders*, 672 So. 2d 46 (Fla. 3d DCA 1996). Florida courts have recognized a distinction between "intentional" torts and those torts that are done with bad faith, malicious purpose, or willful or wanton disregard of human rights, safety, or property. *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1122 (4th DCA 1987) ("The city believes, as did the trial judge, that intentional torts are within the pale of governmental immunity because it equates the word "intentional" with the words "wanton and willful." We believe that the juxtaposition of the latter words with the remainder of the phrase "wanton and willful disregard" connotes conduct much more reprehensible and unacceptable than mere intentional conduct." ). Whether the Officers' conduct crossed this threshold that would allow the City immunity is a question of fact for the jury. *Johnson v. Cannon*, 947 F. Supp. 1567, 1574 (M.D. Fla. 1996).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of February, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record